IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EXEL DIRECT, INC.,

   Plaintiff,

v.

NAUTILUS INSURANCE COMPANY,

   Defendant.

Case No. 2:16-cv-446

JUDGE ALGENON L. MARBLEY

Magistrate Judge Jolson

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Motion for Summary Judgment (ECF No. 41) of Defendant Nautilus Insurance Company. For the reasons set forth below, the Court **GRANTS** the Motion.

### I. BACKGROUND

#### A. Factual Background

Sears, Roebuck and Co. hired Plaintiff Exel Direct, Inc., to install home appliances such as dryers for its customers. Exel Direct, in turn, hired independent contractors to perform the installations. From 2004 to 2008, both Exel Direct and its independent contractors were insured by a policy issued by Nautilus Insurance Company. (ECF No. 1 at 3).

On July 5, 2006, Exel oversaw the delivery of a Sears dryer to Ingrid Gauer and arranged for an independent contractor to install the dryer. (ECF No. 1 at 4). Exel's expert later concluded that the independent contract's installation was flawed: the contractor made a modification to the exhaust duct during installation that resulted in "reduced functionality" and resulted in susceptibility to "exaggerated accumulations of lint in the cabinet, a first fuel for dryer fires." (ECF No. 41-6 at 3). On April 30, 2014, the dryer caught fire and burned down the

1

Gauer home as well as neighboring properties, one owned by Chris and Mary Jean Lem and one owned by Juan Lago. (ECF No. 1 at 4).

State Farm General Insurance Company insured the Gauer home, the Lem home, and the Lago home. (ECF No. 41 at 2-3). In two separate subrogation suits in the Santa Barbara Superior Court, State Farm sued Exel Direct seeking recovery for the fire damage. (*Id.*).

Exel Direct then sought liability coverage for these suits from Nautilus. Nautilus hired Vela Insurance Services to investigate and adjust the claim. Vela concluded that the "damages did not occur until after the Nautilus policy had expired" and that Nautilus therefore had no defense or indemnity obligation to Exel. (ECF No. 1 at 5; 44-8 at 6).

## B. Language of the Policy

The commercial general liability insurance policy that Nautilus provided to Exel Direct provides in relevant part as follows.

The named insureds include: "Exel Direct, Inc." and "Independent Contractors of Exel Direct, Inc."

The Insuring Agreement provides:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
>    ...
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:

      (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)    The "bodily injury" or "property damage" occurs during the policy period; and

      (3)    Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemd to have been known prior to the policy period.

  c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph 1. of Section II – Who is An Insured or any "employee" authorized by you give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

The policy exclusions provide that the policy does not apply to:

  m. Damage to Property Or Property Not Physically Injured

  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

      (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

3

> > (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Finally, the policy contains the following definitions:

> 8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>
>> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> b. You have failed to fulfill the terms of a contract or agreement;
>
> If such property can be restored to use by:
>
>> a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
>>
>> b. Your fulfilling the terms of the contract or agreement..
>
> . . .
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> . . .
>
> 17. "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

4

### C. Procedural Background

On May 19, 2016, Exel filed a Complaint in this Court seeking a declaratory judgment adjudicating the parties' rights, duties, and obligations under the insurance policies Nautilus sold to Exel, as well as associated damages. (ECF No. 1). Nautilus filed its Motion for Summary Judgment on August 28, 2017. (ECF No. 41). The Motion is ripe, fully briefed, and ready for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Applicable Law

In a diversity case, this Court "appl[ies] the choice of law principles of the forum State, here Ohio." *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017), reh'g denied (Nov. 30, 2017) (citing *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017)). Under Ohio law, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Sekeres v. Arbaugh*, 31 Ohio St. 3d 24, 25, 508 N.E.2d 941, 942 (1987).

Here, the parties do not dispute that Ohio law governs interpretation of the insurance contract. And under Ohio law, "interpretations of insurance contracts are questions of law for a court to answer." *Constr. Contractors Employer Grp., LLC v. Fed. Ins. Co.*, 829 F.3d 449, 453 (6th Cir. 2016). Courts in Ohio ascertain the scope of insurance coverage in a policy by "construing the contract 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *Id.* (quoting Allstate Ins. v. Eyster, 189 Ohio App.3d 640, 939 N.E.2d 1274, 1280 (2010)). However, "a coverage-defeating argument advanced by an insurer [must] be the only reasonable interpretation of the policy language." *Burlington Ins. Co. v. PMI Am., Inc.*, 862 F. Supp. 2d 719, 726–27 (S.D. Ohio 2012) (citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 549, 757 N.E.2d 329 (Ohio 2001) ("[I]n order to defeat coverage, the insurer must establish not merely that the policy is

6

capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question.")). If the language in the insurance policy is "susceptible to more than one reasonable interpretation, Ohio courts adopt the interpretation favoring the policyholder." *Id.* (citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, (Ohio 1988); *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989) ("Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured")). As a result, Nautilus may only succeed in its Motion for Summary Judgment if it establishes that a construction that obviates liability is the only construction the contract can reasonably bear.

Here, the insurance contract covers property damage only if it "occurs during a policy period." (ECF No. 41-7 at 18). The parties agree that the policy lapsed in 2008 and that the fire did not occur until April 2014. Nautilus argues that the policy therefore does not cover the April 2014 fire damage and that it had no duty to defend or indemnify Exel. Straightforward enough, or so it seems. Exel counters that the "property damage" at issue is not the fire itself, but instead the improper installation of the dryer: "It is alleged that the contractor improperly installed the dryer and its venting, causing a gap that compromised the integrity, function and use of the dryer. From the installation forward, allegedly accumulating lint degraded the dryers function, and a fire ultimately resulted on April 30, 2014." (ECF No. 41-5).

### B. Nautilus' Motion for Summary Judgment

Nautilus' Motion for Summary Judgment advances several reasons why the contract cannot reasonably bear an interpretation that would lead to Nautilus' liability. First, it argues that the faulty installation did not create "property damage" that "occurred during the policy

7

period" under Section I(b)(2) of the Insuring Agreement. At most, it created a "*condition* for potential future fire damage—the accumulation of lint in the dryer—but did not create latent, continuing, and progressive fire damage that later manifested itself." (ECF No. 48 at 2). Second, even if the faulty installation constituted "property damage," it is not "property damage" caused by an "occurrence" as contemplated by the contract, because Exel was itself responsible for the installation, and under Ohio law, commercial general liability contracts do not insure against an insured's own work. (ECF No. 41 at 12). Third, it argues that even if the fire stemmed from "property damage" caused by an "occurrence," the "impaired property" exclusion under the insurance contract relieves Nautilus from the duty to defend and indemnify. (ECF No. 48 at 3). Ultimately, as discussed below, this Court concludes that the contract is unambiguous: the fire was not "property damage" that "occurred during a policy period." Nautilus therefore has neither a duty to defend nor a duty to indemnify Exel,[1] and the Court need not and declines to address Nautilus' other liability-obviating arguments.[2]

---

[1] There is no duty to defend claims within a complaint that "are clearly and indisputably outside the contracted coverage." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 2007-Ohio-4948, ¶ 19, 115 Ohio St. 3d 241, 246, 874 N.E.2d 1155, 1160 (Ohio 2007) (citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113, 30 OBR 424, 507 N.E.2d 1118 (Ohio 1987)). Moreover, "an insurer's duty to defend is broader than and distinct from its duty to indemnify." *Id.* Because the Court concludes that the complaint's claims are outside the contracted coverage, it follows that there is no duty to indemnify.

[2] Because Exel's claim was properly denied, Exel's bad faith claim also fails. *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010) ("Ohio law clearly states if denial of coverage is appropriate there is no bad faith.") (citing *Hahn's Electric Co. v. Cochran*, No. 01AP–1391, 01AP–1394, 2002 WL 31111850 at *8 (Ohio Ct .App. Sept. 24, 2002)).

It is well-settled under Ohio law that "where an insurance contract limits coverage to injuries that occur during the policy period, the relevant date for triggering coverage is the date of the injuries, not the date of negligence that caused the injury." *Fid. & Guar. Ins. Underwriters, Inc. v. Nationwide Tanks, Inc.*, No. C-1-03-843, 2006 WL 462443, at *4 (S.D. Ohio Feb. 22, 2006) (citing *Wells v. Westfield Ins. Co.*, 2001-Ohio-3172, 2001 WL 96126, at *9-*10 (Ohio 2001) (affirming judgment for insurer where negligence occurred during, but injury occurred after, policy period); *Ruffin v. Sawchyn*, 75 Ohio App.3d 511, 514, 599 N.E.2d 852 (Ohio 1991) (holding that an insurer must indemnify an insured when negligence occurred during a policy period and such negligence proximately caused the injury); *Clapper v. Columbia Mfg. Co.*, 1989 WL 77020, at *1 (Ohio App.3d 1989) (affirming holding that policy did not require insurer to defend or indemnify for defective product sold during policy period where injury occurred after policy expired)).

However, there is an exception to this general rule for certain kinds of "long-term exposure and delayed manifestation injuries." *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 690–91 (6th Cir. 2000). In *Lincoln Electric*, the Sixth Circuit held that, with regard to coverage for workers' injuries from long-term asbestos exposure, "[u]nless a policy or group of policies affirmatively and explicitly make assurances about absorbing the entire cost of a long-term exposure and delayed manifestation injury with exposure extending through a time period more extensive than the time period for that individual policy or constituent policy, [a Court should] assign a pro-rata percentage of exposure value to each legal entity based upon the number of corresponding policy periods that the legal entity assumes." *Id.* Similarly, in *Goodyear v. Aetna*, the Ohio Supreme Court found that insurance policies covered a "continuous pollution across multiple policy periods that gave rise to the occurrences and claims to which

9

the[] policies apply." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 6, 95 Ohio St. 3d 512, 515, 769 N.E.2d 835, 840 (Ohio 2002).

In *Fidelity and Guarantee Insurance Underwriters* this Court explored the distinction between "the general principle of Ohio law that it is the time of the injury, not the time of negligence causing the injury, that controls whether an injury triggers coverage during the policy period" and the continuous trigger theory recognized in *Lincoln Electric* and *Goodyear*. *Guar. Ins. Underwriters, Inc. v. Nationwide Tanks, Inc.*, No. C-1-03-843, 2006 WL 462443, at *4 (S.D. Ohio Feb. 22, 2006). Namely, in *Lincoln Electric* and *Goodyear*, "at least a portion of the injuries. . . . occur[ed] during a policy period, and often during more than one policy period." *Id.* In light of that distinction, the *Fidelity* court concluded that an insured could not claim coverage for the faulty welding of a seam during construction of an above-ground fertilizer storage tank which ultimately ruptured, causing catastrophic property damage. *Id.* As the Court noted:

> While damage to the tank itself from corrosion may have occurred continuously, including during the policy period, the injuries that Intervenor Defendants alleged in the underlying case did not involve long-term exposure or delayed manifestation injuries. The injuries here occurred in one fell swoop, well outside the policy period, when the tank burst on March 3, 2000. Thus, neither *Goodyear* nor *Lincoln Electric* calls for a departure from the general principle of Ohio law that it is the time of the injury, not the time of negligence causing the injury, that controls whether an injury triggers coverage during the policy period.

*Id.*

*Fidelity Insurance* is on all fours with this case. The operative question is whether, assuming—as the Court must at this stage—that the error in installing the dryer led to an accumulation of lint which, in turn, led to an increased risk of fire, at what point in that timeline did the actual "property damage" occur? Just as in *Fidelity Insurance*, the damage to the dryer itself may have "occurred continuously, including during the policy period," but the injuries that

10

the homeowners alleged in the underlying case "occurred in one fell swoop, well outside the policy period." Because the injuries alleged in the underlying cases did not occur during the policy period, they do not qualify as covered property damage under the policy, and Nautilus does not owe Exel a duty to defend or indemnify as a matter of law.

Moreover, contrary to Exel's urging, this case is not analogous to cases such as *Cincinnati Ins. Cos. v. Motorists Mut. Ins. Co.*, 18 N.E.3d 875 (Ohio Ct. App. Sept. 8, 2014); *Ohio Cas. Ins. Co. v. Hanna*, Nos. 07CA0016-M, 07CA0017-M, 2008 WL 2581675 (Ohio Ct. App. June 30, 2008); *Burlington Ins. Co. v. PMI Am., Inc.*, 862 F. Supp. 2d 719 (S.D. Ohio 2012); and *Plum v. W. Am. Ins. Co.*, 2006 WL 256881 (Ohio Ct. App. February 3, 2006) in which courts have concluded that property damage occurring after a coverage period elapsed was covered because it was the consequence of ongoing and continuous property damage that occurred during an initial negligent act within the policy period. In each of those cases, the relevant damage inarguably occurred within the policy period, even though it may have manifested later. *See, e.g., Plum v. W. Am. Ins. Co.*, 2006 WL 256881, at *4 (Ohio Ct. App. February 3, 2006) ("The potential for coverage is triggered when an 'occurrence' results in 'property damage.' There is no requirement that the damages 'manifest' themselves during the policy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective."). Here, the claimed "property damage" is the fire damage—not merely ongoing lint accumulation. In other words, had the underlying complaints asserted damage to the dryer, Nautilus may have been obligated to defend and indemnify as to the impairment of the dryer. But they did not, so coverage under the policy was not implicated.

11

## IV. CONCLUSION

Defendant Nautilus' Motion for Summary Judgment is **GRANTED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                     s/Algenon L. Marbley

                                          **UNITED STATES DISTRICT JUDGE**

**Date: March 30, 2018**